**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**


**TRACIE TURNER**                                                                          **PLAINTIFF**


**VS.**                              **CASE NO. 3:16CV00170 PSH**


**NANCY A. BERRYHILL, Acting Commissioner,**
  **Social Security Administration**                                          **DEFENDANT**


**ORDER**

Plaintiff Tracie Turner ("Turner"), in her appeal of the final decision of the Commissioner

of the Social Security Administration (defendant "Berryhill") to deny her claim for Supplemental

Security Income benefits (SSI),[1] contends the Administrative Law Judge (ALJ) failed to resolve an

apparent conflict between the testimony of the vocational expert ("VE") and the *Dictionary of*

*Occupational Titles* ("DOT"), and the ALJ improperly rejected the opinion of treating physician Dr.

Cagle ("Cagle"). The parties have ably summarized the medical records and the testimony given

at the administrative hearing conducted on April 20, 2015. (Tr. 103-125). The Court has carefully

reviewed the record to determine whether there is substantial evidence in the administrative record

to support Berryhill's decision. 42 U.S.C. § 405(g).

Turner was 26 years old at the time of the administrative hearing in January 2015. She

testified that she lives with her mother and her four-year old daughter; her mother assists in the care

---

[1]

Turner initially filed seeking both SSI and child disability DIB benefits, but effectively withdrew
her DIB application after amending her alleged disability onset date to October 29, 2013, when she
was 25 years old.

1

of Turner's child; she can drive and is a high school graduate but does not read or do basic math well; her only work experience was a brief stint as a cashier/cook at a restaurant; she wakes up at night with numbness in her hand and a sore neck; she has breathing problems which eliminate her ability to enjoy hobbies; she takes medication prescribed Cagle for breathing problems; she has asthma which affects her ability to cook and clean; she can work for only 30 minutes before needing a 20 minute break; she has arthritis in her right knee and left shoulder; she has had neck and shoulder problems for three months or more; she can lift for a maximum of 30 minutes before needing a break (with the break not always being effective); she has irritable bowel syndrome ("IBS") and gastroesophageal reflux disease ("GERD"), for which Cagle prescribed medication (which was only sometimes effective); she suffers from cramping and diarrhea, which require her to leave a work station every hour for 20 minutes; she has bad allergies, for which Cagle prescribed medication; and she smokes 1/4 pack of cigarettes daily. (Tr. 107-120).

A vocational expert, Stephanie Ford ("Ford"), testified at the administrative hearing. The ALJ asked Ford a hypothetical question to determine if there were jobs for a person of Turner's age and education with the ability to perform work with no exertional limitations and the following restrictions: avoid concentrations of dust, fumes, or concentrated exposure to dust, fumes, gasses, odors, smoke, poor ventilation, or other airborne irritants; avoid extreme cold; semi-skilled work where interpersonal contact is routine but superficial; tasks at the job learned by experience with judgment; and supervision is little for routine work but detailed for non-routine work. Ford stated such a worker could perform the job of grocery store clerk. A second hypothetical question was posed, with the ALJ adding the restriction of unskilled work with supervision being simple, direct, and concrete. Ford stated such a worker could perform the jobs of fast food worker and sandwich

maker.  (Tr. 121-123).  If either of the hypothetical questions were altered to require frequent unscheduled breaks of 15-20 minutes, the jobs previously identified, as well as other jobs,  would be eliminated for this worker.  (Tr. 124).

In his April 2015 decision the ALJ found Turner had severe impairments of asthma, hypertension, IBS, GERD, and adjustment disorder with mixed depression and anxiety.  The ALJ found Turner to have the residual functional capacity which mirrored the description contained in the first hypothetical question posed to Ford.  Turner's subjective assertions were found "not entirely credible."  (Tr. 92).  The ALJ assigned great weight to the findings of consultative examiner Dr. Troxel, while giving "little weight" to Cagle's opinions.  Relying on Ford's testimony, the ALJ found Turner was not disabled.  (Tr. 85-97).

***ALJ's failure to resolve an apparent conflict between Ford's testimony and the DOT:*** Ford was asked to assume a worker of Turner's age and education who was, among other things, limited to work where interpersonal contact was superficial.  Ford identified three jobs (grocery store clerk, fast food worker, and sandwich maker) which the hypothetical worker could perform.  Turner reasons that these jobs, which under the DOT require significant contact with people, exceeded the limitations posed by the ALJ.  This argument is without merit.  As Berryhill notes, the ALJ's hypothetical questions limited the *quality*, not the quantity, of the interpersonal contact to be encountered in the work setting.  Turner does not dispute that the cited jobs require only superficial contact with others, which is precisely what the ALJ described.  There was no conflict between Ford's testimony and the DOT. *See Hulsey v. Astrue*, 622 F.3d 917 (8th Cir. 2010) (vocational expert testified an unskilled worker limited to superficial interpersonal contact could perform the job of cashier – case decided on other grounds).

*ALJ improperly rejected the opinion of treating physician Cagle:* Turner correctly states that a treating physician's opinion is to be given substantial weight and may be disregarded only if persuasive contradictory evidence exists. *See, e.g., Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). Cagle, in a medical source statement dated December 18, 2014, opined the following regarding Turner: she could lift a maximum of 10 pounds occasionally, lift less than 10 pounds frequently, stand and walk about 3 hours, stand and walk 30 minutes without a break, sit about 3 hours, and sit 30 minutes without a break. Cagle also stated Turner needs special workplace requirements for unpredictable nausea/diarrhea causing unscheduled bathroom breaks, frequent rest periods and longer than normal breaks, and to shift at will from sitting or standing/walking. He opined Turner would not have the stamina to complete a work day, work week, or maintain an ordinary work routine, but stated she could reach in all directions for 2/3 of a work day, finger 2/3 of a work day, and handle for 2/3 of a work day. Finally, Cagle found Turner would need to be frequently redirected to remain on task, would need to avoid moderate exposure to extreme cold, extreme heat, high humidity, fumes, odors, dust, gas, perfumes, soldering fluxes, solvents/cleaners, and chemicals, and would miss more than 3 days per month due to her impairments or treatments. (Tr. 964-965).

The ALJ assigned "little weight" to Cagle's opinion, finding it "inconsistent with Dr. Cagle's own treatment notes, which regularly indicated normal breath sounds and intact gait, strength, and range of motion." (Tr. 94). The ALJ further noted Cagle's opinion was inconsistent with the overall objective medical evidence, including the findings of consultative examiner Dr. Troxel ("Troxel"). The ALJ assigned "great weight" to Troxel's findings.

Turner concedes that Troxel's findings are at odds with the findings of Cagle, but argues that "where there is a 'tie,' so to speak, the treating doctor's opinion should be given greater weight than

the one-time consultative examiner, unless there are good reasons for preferring the consultative doctor." Docket entry no. 13, page 14. In this instance, we disagree with Turner's characterization of a "tie," and find good reasons for affirming the decision of Berryhill.

*Medical records other than those of Cagle:* Cagle's opinion is inconsistent with the other medical evidence in the record during the relevant period for purposes of disability. On the alleged date of onset of disability, Turner was seen at the Jonesboro Church Health Center, where she was diagnosed with sinusitis, bronchitis, GERD, IBS, hypertension, and thoracic spine pain. A thoracic spine x-ray yielded normal results. (Tr. 686, 746-748).

During the relevant period, Turner went to the emergency room at Arkansas Methodist Hospital on six occasions[2], complaining of sinusitis and bronchitis. She was typically treated with antibiotics.

Turner was first seen by Cagle on January 13, 2014.

The next day, Turner was seen by Dr. Samuel Hester ("Hester") for a consultative mental evaluation. Hester diagnosed pain disorder and adjustment disorder with mixed anxiety and depression. Hester opined Turner could drive, communicate and interact in a socially adequate manner, communicate intelligibly, cope with the mental demands of basic work tasks, concentrate on basic tasks, persist in completing tasks, and can "complete work tasks within an acceptable time frame unless chronic medical issues slow her too much." (Tr. 792).

Troxel also examined Turner in January 2014, diagnosing her with asthma, GERD, IBS, hypertension, and TMJ. Troxel indicated Turner "needs to quit smoking," and found no significant

---

[2]

The visits to the emergency room were on November 22, 2013, January 17, May 12, July 20, July 26, 2014, and March 15, 2015.

decrease in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. (Tr. 843-848). Troxel also found Turner to have normal range of motion in her elbows, shoulders, wrists, hands, hips, knees, ankles, and cervical and lumbar spine, a negative straight-leg raising test, no muscle spasms, no muscle atrophy, and no sensory abnormalities.

Turner underwent cervical spine (without contrast) and lumbar spine MRIs in early September 2014. These showed no disc herniation or spinal stenosis. A follow-up cervical spine (with contrast) MRI was performed a few weeks later. The radiologist found no enhancing mass identified on the spinal cord. (Tr. 878-882). In November 2014, Crystal Gayle Watson ("Watson"), physician's assistant at Baptist OneCare, reviewed Turner's MRI with her, indicating there were no findings to address surgically. According to Watson, the MRI showed mild degenerative changes, with no spinal stenosis and no disc herniations.[3] (Tr. 932-934). Watson wrote progress notes finding Turner to be pleasant and cooperative, with normal gait, good posture, negative straight-leg raising test, no sensory deficits, and giving "very poor effort on motor exam left side more than right making it difficult to determine if there is any true weakness." Watson found Turner to have normal breathing, with no respiratory distress, normal range of motion in her neck, normal mood and affect, and normal judgment and thought content.

Summarizing the medical treatment and opinions provided by professionals other than Cagle during the relevant period, Turner was found without significant limitations, although she did struggle with occasional bouts of sinusitis and/or bronchitis and/or leukocytosis. This medical evidence is in contrast to the opinion of Cagle that Turner is totally disabled.

---

[3]

The follow-up MRI performed on September 29, 2014, did indicate "linear increased T2 signal intensity in the spinal cord at level C7 on previous MRI from 9/12/14, which may represent a syrinx." (Tr. 925).

*Cagle's records:*  Cagle's own treatment notes are also at odds with his opinion of total disability.  Turner was seen six times by Cagle during the relevant period.  Her first visit, in January 2014, reestablished care with Cagle following a three year hiatus.  She complained of congestion, cough with headache and facial pressure, body aches, and a sore throat.  Cagle indicated she "needs to get back on meds she took for Asthma, IBS, allergies, and anxiety."  (Tr. 865).  Cagle's examination showed, among other things, that Turner was alert and oriented, with normal range of motion in her neck and spine and extremities, with normal gait, normal motor function, and no wheezes, rhonchi, or rales.  Cagle diagnosed Turner with asthma (unspecified), hypertension (benign), reflux esophagitis, acute laryngotracheitis, acute sinusitis, and IBS.  Medications were refilled for asthma, hypertension, and reflux laryngotracheitis.  New medications were prescribed for sinusitis and IBS.  (Tr. 862-867).

Turner was next seen by Cagle in February 2014, complaining of shoulder, back, and neck pain following a motor vehicle accident the previous month.  Turner also sought a refill on prescriptions and described increased anxiety.  Cagle noted Turner was doing "some better" on her prescriptions.  Upon examination, Cagle found Turner alert and oriented, with normal range of motion in her neck and spine and extremities, with normal gait, normal motor function, and no wheezes, rhonchi, or rales.  Cagle found some soreness in her neck, right shoulder, and lumbar area.  Cagle diagnosed asthma (unspecified), hypertension (benign), reflux esophagitis, IBS, cervicalgia, pain in shoulder joint, lumbago, motor vehicle collision, dysthymic disorder, and long-term use of other medications.  In addition to continuing medications for her ailments, Cagle referred Turner to physical therapy for the neck, shoulder, and back pain.  (Tr. 868-871).

Cagle saw Turner in July 2014 following an emergency room visit for bronchitis and

leukocytosis. Cagle described Turner as alert and oriented, with normal range of motion in her neck, spine, and extremities, with normal gait, normal motor function, and no wheezes, rhonchi, or rales. Cagle found some soreness in Turner's neck, right shoulder, and lumbar area. He diagnosed her with asthma (unspecified), leukocytosis (unspecified), and bronchitis (not specified as acute or chronic), and prescribed medication for the three ailments. (Tr. 928-930).

Cagle next saw Turner in November 2014, when Turner sought refills and wished to discuss results from her MRIs. Cagle's examination of Turner showed she was alert and oriented, with normal range of motion in her neck, spine, and extremities, with normal gait, normal motor function, and no wheezes, rhonchi, or rales. Cagle found some soreness in Turner's neck, right shoulder, and lumbar area. Turner was diagnosed with leukocytosis (unspecified), hypertension (benign), asthma (unspecified), dysthymic disorder, reflux esophagitis, cervicalgia, syringomyelia and syringobulbia. Medications were prescribed for hypertension, asthma, dysthymic disorder, reflux esophagitis, and cervicalgia. (Tr. 921-923).

Turner complained of a pounding headache, nausea, vomiting, and swelling in her neck when she saw Cagle in early December 2014. Cagle found her alert and oriented, with normal range of motion in her neck and spine and extremities, normal gait, normal motor function, and no wheezes, rhonchi, or rales. Cagle found some soreness in Turner's neck, right shoulder, and lumbar area. Turner was diagnosed with leukocytosis (unspecified), hypertension (benign), asthma (unspecified), dysthymic disorder, reflux esophagitis, cervicalgia, and syringomyelia and syringobulbia. Medications were continued or prescribed for hypertension, asthma, dysthymic disorder, reflux esophagitis, and cervicalgia, and Zithromax was added. (Tr. 936-938).

The final visit by Turner during the relevant period occurred in February 2015, when she

presented with complaints of coughing up thick yellow mucus.  Cagle found her alert and oriented, with normal range of motion in her neck, spine, and extremities, with normal gait and motor function, and no wheezes or rhonchi, but faint rales.  Cagle found some soreness in Turner's neck, right shoulder, and lumbar area.  Cagle diagnosed Turner with leukocytosis (unspecified), hypertension (benign), asthma (unspecified), dysthymic disorder, reflux esophagitis, cervicalgia, syringomyelia and syringobulbia, pneumonia (organism unspecified), and insomnia (unspecified). Medications were continued or prescribed for hypertension, asthma, dysthymic disorder, reflux esophagitis, and cervicalgia.  Amoxycillin was prescribed for pneumonia, and Seroquel was prescribed for insomnia.  (Tr. 994-997).

While Cagle's medical source statement indicates Turner is totally disabled, the medical notes which correspond to her six visits to Cagle are not consistent with such a portrayal.  Instead, Cagle's records show he is treating her for a variety of ailments which limit her in certain aspects, but do not, either singularly or in combination, correspond with the medical source statement Cagle executed.

*Records from outside the relevant time period:* Turner argues that her school attendance records support her claim for disability, showing she would be unable to consistently attend to a job. While the record contains evidence that Turner missed school frequently, this occurred in 2004, when she was 16 years old, and is too remote to shed significant light on her impairments and abilities during the relevant time period.  Similarly, the medical records which post-date the relevant period are not considered due to their failure to illuminate Turner's condition during the time in question.

Acknowledging that Cagle is due a certain deference as a treating physician, the medical

evidence of record, including his own treatment notes, provide substantial evidence to support the ALJ's findings in this case.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence.  We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision.  *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Turner's complaint is dismissed with prejudice.

IT IS SO ORDERED this 6th day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE